843 F.2d 319
 Fed. Sec. L. Rep. P 93,548
WASHINGTON PUBLIC UTILITIES GROUP, et al., Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the WESTERN DISTRICT OF
WASHINGTON, Respondent,
Henry PUCHALL; Joseph Harris; David Gold; Marvin Frankel;
Chemical Bank, et al., Real Parties in Interest.
SALOMON BROTHERS, INC., and Columbia Rural Electric
Association, Inc., et al., Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the WESTERN DISTRICT OF
WASHINGTON, Respondent,
WASHINGTON PUBLIC UTILITIES GROUP, et al., Real Parties in Interest.
 Nos. 87-7236, 87-7336 and 87-7355.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1987.
Decided Dec. 2, 1987.
As Amended April 12, 1988.
 
 Albert Malanca, Tacoma, Wash., for Wash. Public Utilities Group.
 Roy Moceri, Seattle, Wash., for R.W. Beck.
 David F. Jurca, Seattle, Wash., for Columbia Rural Elec. Ass'n.
 Paul Bernstein, New York City, for class plaintiffs.
 James J. Hagan, New York City, for Blyth Eastman.
 Richard Clary, New York City, for Chemical Bank.
 Petition for Writ of Mandamus from the United States District Court for the Western District of Washington (Seattle).
 Before GOODWIN, ALARCON and LEAVY, Circuit Judges.
 OPINION*
 ALARCON, Circuit Judge:
 
 
 1
 Petitioners in this consolidated petition for a writ of mandamus ask us to compel the district court to vacate its order changing the venue of this action from the United States District Court for the Western District of Washington to the District of Arizona (Tucson). We deny the requested relief because petitioners have failed to demonstrate (1) that the district court clearly and indisputably abused its discretion in determining that a change of venue was required because of pervasive, prejudicial publicity and the financial interest of most potential jurors in the outcome of the litigation, and (2) that the district court's interpretation of the applicable legal authority was clearly erroneous as a matter of law.
 
 
 2
 * Procedural Posture
 
 
 3
 The Washington Public Power Supply System (WPPSS) undertook to construct five nuclear-powered electricity generating plants. Bonds were issued to provide the funds to construct these plants. WPPSS terminated construction of two of the five plants and defaulted on the bonds sold to finance their construction.
 
 
 4
 Because of the default, Chemical Bank, as bond fund trustee, filed an action in the Western District of Washington alleging violations of state and federal securities laws. Similar actions were filed by or on behalf of bond holders in the Western District of Washington and the Southern District of New York. The defendants include WPPSS, Northwest Utilities, the financial advisor to WPPSS, the consulting and construction engineers for the projects, the law firms who were bond and special counsel to WPPSS in connection with the bond issues, the underwriters of the bonds, two bond rating agencies and the Bonneville Power Administration, an agency of the United States. On August 5, 1983, the Judicial Panel on Multidistrict Litigation transferred all cases involving securities law violations to the Western District of Washington for coordinated or consolidated pretrial proceedings with the actions pending there. Because of the recusal of each of the district judges of the Western District of Washington, Judge Richard M. Bilby of the District of Arizona was designated to preside over the trial of these matters.
 
 
 5
 On May 11, 1984 defendant Underwriters filed a motion for a change of venue pursuant to 28 U.S.C. Sec. 1404(a) (1982). The Underwriters contended that it would not be possible to receive a fair jury trial in the State of Washington because of pervasive, prejudicial publicity. All of the plaintiffs and all defendants residing outside the Pacific Northwest supported the motion for a change of venue.
 
 
 6
 In support of their motion to change venue, the Underwriters presented numerous newspaper articles, editorial cartoons, and transcripts of television programs addressing the bond default by WPPSS. In addition, they presented an affidavit by Shandra Tietze, compiling and calculating statistical evidence of the number of ratepayers in the Western District of Washington and the cost of a judgment to those ratepayers, an affidavit by William C. Erxleben, analyzing the public perceptions and the economic impact of WPPSS's default, with a report on the subject attached, and two affidavits by Donald E. Vinson, containing a statistical survey designed to measure public opinion and attitudes towards parties and issues in the case, along with an analysis of the survey results, and analyzing and disagreeing with the results of a survey by Peter W. Sperlich.
 
 
 7
 Those opposed to the motion for a change of venue presented a survey by Peter W. Sperlich of 600 persons within the Western District of Washington who were asked questions designed to elicit information that would reflect their ability to be fair and impartial if called as jurors at the WPPSS trial. They also submitted several affidavits. Two were submitted by Sperlich, analyzing the results of his survey and analyzing and disagreeing with the results of the Vinson survey. Another was submitted by William B. Beyers, analyzing and disagreeing with the Erxleben report.
 
 
 8
 The Underwriters requested that the matter be transferred to the Southern District of New York or the Northern District of Texas (Dallas Division). Many of the parties filed memoranda with the court suggesting other sites for the trial of this matter in the event that the court ordered a transfer.[1]
 
 
 9
 After hearing arguments on the merits of the motion, Judge Bilby ordered a change of venue.
 
 
 10
 In January 1985, Judge Bilby recused himself upon learning that his father owned bonds issued to finance other WPPSS projects. Judge William D. Browning of the District of Arizona was designated to replace Judge Bilby and to preside over the trial. On May 16, 1985, Judge Browning vacated all of Judge Bilby's orders and told the parties that he would make an independent review of the record concerning any motion they wished to resubmit. The motion to change venue was resubmitted.
 
 
 11
 On December 13, 1985, Judge Browning announced his intended ruling on the motion for a change of venue. Judge Browning orally advised counsel as follows:
 
 
 12
 With regard to the venue motion, Miss Vana has sent me the material that Judge Bilby had before him on that motion. I reviewed all the materials necessary to adopt his ruling as my own and to enter a conditional order to advise you I will enter an order changing the venue in this matter from the Pacific Northwest, subject to the right of any party who believes there are intervening fact questions affecting that decision, and any intervening, controlling or highly persuasive legal theory. I say highly persuasive because I think the question is virtually discretionary. This can be submitted by briefs to the court by proponents of reestablishing venue in the Northwest by January 31st, 1986, responses by February 15th and replies by February 28th.
 
 
 13
 If oral argument is requested by any party, and the court feels it's necessary to reexamine that ruling and my conditional ruling today, we'll set it for oral argument.
 
 
 14
 On February 10, 1987, Judge Browning filed an order changing venue and designating Tucson, Arizona as the trial site. Judge Browning stated that he had reviewed all materials submitted to him regarding possible choices and had visited the various sites. He also considered the convenience of witnesses and parties, the availability of jurors within a reasonable proximity, the availability of adequate short term and long term housing, the availability of restaurants, service industries and air travel, the requirements of counsel for adequate office space, library resources, legal support services and computer services, and the needs and convenience of the court. Judge Browning also considered local attitudes towards nuclear power and utility rates and found that they did not militate against Tucson as a forum. Finally, Judge Browning stated that no site would be convenient to all parties but that Tucson would present the minimum of inconvenience and allow for a fair trial.
 
 II
 Issues Presented for Mandamus Review
 
 15
 In case No. 87-7236, defendants, including WPPSS and 111 of Washington's and Oregon's public utilities, cooperatives, municipalities and public officials (Petitioners), contend that the district court committed errors of law in granting the motion to change venue. They contend that the district court did not properly consider each of the relevant factors for changing venue set forth in 28 U.S.C. Sec. 1404(a). These contentions can be summarized as follows:
 
 
 16
 1. Judge Browning had decided to change venue before any formal motion was made.
 
 
 17
 2. Judge Browning improperly considered his own convenience in deciding whether to change venue and where the trial should be held.
 
 
 18
 3. Judge Browning ignored the convenience of the parties and witnesses.
 
 
 19
 4. Judge Browning erred in giving weight to plaintiffs' support of the motion to change venue.
 
 
 20
 Petitioners also argue that the district court abused its discretion in ordering a change of venue on the ground that pervasive, prejudicial publicity would prevent the selection of a fair and impartial jury. They assert that the evidence does not demonstrate that the court could not impanel a fair and impartial jury. Petitioners claim that a sample examination and the evidence they submitted in opposition to the motion for change of venue showed that an impartial jury could be impaneled.
 
 
 21
 In case No. 87-7336, Salomon Brothers Inc. (Salomon) contends the district court committed clear legal error in selecting Tucson as the place for trial, in refusing to consider districts outside the Ninth Circuit, and in failing to give proper consideration to the convenience of the parties and the witnesses as required by Section 1404(a). Upon stipulation with class plaintiffs, Salomon abandoned its cross-petition and accordingly that cross-petition is dismissed.
 
 
 22
 In case No. 87-7355, 17 rural electric cooperatives and related parties in Washington, Oregon and Idaho (Columbia Defendants) contend that the district court's order transferring the trial to the District of Arizona (Tucson) was clearly erroneous as a matter of law because section 1404(a) limits transfer of the place of trial to a district or division where the matter could have been filed originally. The Columbia Defendant's also raise the same issues presented in case No. 87-7236.
 
 
 23
 The merits of case No. 87-7236 will be discussed under rubric V. The merits of case No. 87-7355 will be discussed under rubric VI.
 
 III
 
 24
 Factors Governing the Issuance of a Writ of Mandamus
 
 
 25
 Although we have the power to issue a writ of mandamus under the All Writs Statute, 28 U.S.C. Sec. 1651 (1972), "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam).
 
 
 26
 The appropriate standard for reviewing a petition for mandamus relief depends upon whether the challenged order involved an exercise of discretion or an alleged error of law. A decision whether a change of venue is compelled by pervasive prejudicial publicity concerns an exercise of discretion. Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 726 F.2d 1381, 1399-1400 (9th Cir.), cert. denied, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). Compliance with the requirements of section 1404(a) is a question of statutory interpretation. A question of statutory interpretation is a question of law and is reviewed de novo. See Trustees of Amalgamated Ins. v. Geltman Indus., 784 F.2d 926, 929 (9th Cir.) (we review a ruling on interpretation and application of a statute de novo ), cert. denied, --- U.S. ----, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986); Native Village of Stevens v. Smith, 770 F.2d 1486, 1487 (9th Cir.1985) (we review an issue of statutory interpretation de novo ), cert. denied, 475 U.S. 1121, 106 S.Ct. 1640, 90 L.Ed.2d 185 (1986).
 
 
 27
 In Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953), the Supreme Court held that a person seeking mandamus relief must satisfy the "burden of showing that [his] right to issuance of the writ is 'clear and indisputable.' " Id. at 384, 74 S.Ct. at 148 (quoting United States v. Duell, 172 U.S. 576, 582, 19 S.Ct. 286, 287-88, 43 L.Ed. 559 (1899)). In Daiflon, the Supreme Court reversed an order of the Fifth Circuit granting a writ of mandamus reinstating a jury verdict after the district court had granted a new trial. In explaining its ruling the Supreme Court instructed:
 
 
 28
 The authority to grant a new trial, moreover, is confided almost entirely to the exercise of discretion on the part of the trial court. Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is "clear and indisputable."
 
 
 29
 Daiflon, 449 U.S. at 36, 101 S.Ct. at 191 (citation omitted).
 
 
 30
 In Kasey v. Molybdenum Corp. of America, 408 F.2d 16 (9th Cir.1969), we held that we would not issue a writ of mandamus vacating or granting a change of venue order
 
 
 31
 when it appears from a well-reasoned holding by the trial judge that he has considered the issues listed in 1404(a) and has made his decision accordingly. It is not our function to substitute our decision for that of the judge most familiar with the problem. "At best, the judge must guess, and we should accept his guess unless it is too wild."
 
 
 32
 Id. at 20 (quoting Ford Motor Co. v. Ryan, 182 F.2d 329, 331-32 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950)).
 
 
 33
 Before applying the standards set forth in Daiflon and our decision in Kasey to the district court's exercise of its discretion in ordering a change of venue in this matter, we must first consider whether petitioners are correct in claiming that Judge Browning committed errors of law in applying section 1404(a) and in selecting Tucson as the place of trial.
 
 
 34
 We consider five factors in deciding whether a case is appropriate for mandamus relief where it is alleged that the district court committed errors of law. In re Nat'l Mortgage Equity Corp., 821 F.2d 1422, 1425 (9th Cir.1987). In Bauman v. United States Dist. Court, 557 F.2d 650 (9th Cir.1977), we listed the following factors:
 
 
 35
 (1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he or she desires.
 
 
 36
 (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)
 
 
 37
 (3) The district court's order is clearly erroneous as a matter of law.
 
 
 38
 (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of federal rules.
 
 
 39
 (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 40
 Id. at 654-55 (citations omitted).
 
 
 41
 The Bauman factors "are to be considered in the aggregate and often require a careful weighing before an appellate court can determine whether a writ should issue." Valley Broadcasting Co. v. United States Dist. Court, 798 F.2d 1289, 1291-92 (9th Cir.1986). Bauman does not require that all of the factors be satisfied. Id. at 1292 n. 3.
 
 
 42
 When we are asked to review questions of law, one factor we consider before we may issue a writ of mandamus is whether the district court's order is clearly erroneous as a matter of law. Bauman, 557 F.2d at 654-55. "A question of law is 'clearly erroneous' for the purposes of a mandamus petition if we are 'left with the definite and firm conviction that a mistake has been committed.' " United States v. Harper, 729 F.2d 1216, 1222 (9th Cir.1984) (quoting In re Cement Antitrust Litigation, 688 F.2d 1297, 1305 (9th Cir.1982), aff'd mem. sub nom. Arizona v. Ash Grove Cement Co., 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983)). Accord Levine v. United States Dist. Court, 764 F.2d 590, 594 (9th Cir.1985), cert. denied, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986).
 
 IV
 
 43
 Potential Monetary Damages Do Not Justify Mandamus Relief
 
 
 44
 Whether the challenged order involves an exercise of discretion or an alleged error of law, the petitioner must first show that he has "no other adequate means to attain the relief he desires...." Daiflon, 449 U.S. at 35, 101 S.Ct. at 190; accord Bauman, 557 F.2d at 654. Petitioners contend that a writ of mandamus is proper because they have no other adequate means to attain the relief they desire. They argue that if they are required to await an appeal of the final judgment to correct the change of venue order, they will be required to endure the expense and inconvenience of a second massive trial.
 
 
 45
 Mandamus relief may be justified if a party will suffer severe prejudice, as the result of inevitable delay and increased costs in being forced to undergo an unnecessary trial that is not correctable on appeal. Cement Antitrust Litigation, 688 F.2d at 1303. We found such hardship in Varsic v. United States Dist. Court, 607 F.2d 245, 251-52 (9th Cir.1979). There, a plaintiff, proceeding in forma pauperis filed a suit seeking pension benefits. The district court erroneously transferred the case from the Central District of California to the Southern District of New York. We found that the plaintiff would suffer "peculiar hardship" because his sole source of income was social security and the costs of a second trial plus the delay in receiving any benefits might "severely prejudice" him. Id. at 252 (emphasis added).
 
 
 46
 The petitioners in this matter can seek review of the order changing venue following final judgment. See Los Angeles Memorial Coliseum Comm'n, supra, (following a jury trial, court reviewed on appeal order denying motion to change venue). We have consistently rejected the "position that the costs of trying massive civil actions render review after final judgment inadequate." Cement Antitrust Litigation, 688 F.2d at 1303 (quoting In re Sugar Antitrust Litigation, 559 F.2d 481, 484 (9th Cir.1977)). See also Gulf Research & Dev. Co. v. Harrison, 185 F.2d 457, 459 (9th Cir.1950) (inconvenience of proceeding with what may be an unnecessary trial is a hardship of litigation in our judicial system and is insufficient to justify mandamus relief).
 
 
 47
 Petitioners have failed to demonstrate that they will suffer "severe prejudice" or that the remedy of an appeal of the court's alleged errors of law is inadequate.[2]
 
 V
 Case No. 87-7236
 
 48
 Having set out the scope of our review of petitions for writ of mandamus, we next address the issues presented in each petition.
 
 
 49
 The motion for a change of venue on this matter was made pursuant to section 1404(a). Section 1404(a) states that:
 
 
 50
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 
 
 51
 The parties have briefed the propriety of the court's order under the assumption that section 1404(a) is applicable when it is claimed that a fair and impartial jury cannot be found in the district where the plaintiff filed the action because of pervasive prejudicial publicity. They disagree only as to whether the court properly applied the statute. Because we conclude that the petitioners have failed to meet the strict standards for mandamus relief, we will assume that the court was required to comply with section 1404(a) for purposes of addressing the issues raised by petitioners. We leave to another day determination of the question, not briefed by the parties, whether a district court may transfer an action to a district where it could not have been filed originally in order to provide a defendant with a forum where he can get a fair trial free of pervasive prejudicial publicity.
 
 
 52
 A. The District Court Did Not Commit Clear Errors of Law.
 
 
 53
 Petitioners contend that Judge Browning made up his mind to change the place of trial before a formal motion was made. The record does not support this contention. Furthermore, section 1404(a) does not expressly require that a formal motion be made before the court can decide that a change of venue is appropriate. When the trial judge becomes aware through massive news coverage that a fair trial cannot be had in the place where the action was filed, the judge has a duty to protect the defendant's rights to a fair trial. See e.g., Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966) ("where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity"). Petitioners have failed to demonstrate that a sua sponte order to change venue would be a clear error as a matter of law.
 
 
 54
 Petitioners argue that the court erred in transferring the trial to Tucson because transfer was made for the court's convenience without consideration of the convenience of the parties and the witnesses. Petitioners claim that Tucson is convenient to no one and that fact alone shows the court did not properly apply the convenience requirement of section 1404(a). While a federal court may not order transfer under section 1404(a) solely for its convenience, "[i]nconvenience to the court is a relevant factor." In re Scott, 709 F.2d 717, 721 (D.C.Cir.1983) (per curiam). See Pfizer, Inc. v. Lord, 447 F.2d 122, 125 (2d Cir.1971) (convenience of judge not normally a factor but it is not an abuse of discretion to consider it in multidistrict legislation); Alaska Airlines v. United States, 399 F.Supp. 906, 914 (N.D.Cal.1975) (appropriate to consider convenience of judge when deciding whether to change venue if it is not the only factor considered).
 
 
 55
 Moreover, it is clear from the district court's order designating Tucson as the trial site that it gave extensive consideration to the convenience of the parties and witnesses. The court stated that "[n]o trial site actively considered would be convenient to all counsel and witnesses, but a minimum of inconvenience, consistent with the aim of an orderly and efficient trial, has been the court's goal." In addition, the court said it "has also considered factors relating to the convenience of witnesses, litigants and counsel including the availability of adequate short-term and long-term housing, restaurants, and other service industries." Petitioners have failed to show that the court's application of the convenience of the parties and the witnesses requirement of section 1404(a) was clearly erroneous as a matter of law.
 
 
 56
 Petitioners also contend that the district court clearly erred as a matter of law when it took into consideration the plaintiffs' support of the motion for a change of venue. They argue that the plaintiffs had not shown any change of circumstances since the case was originally filed to support transferring the case from their original choice of forum.
 
 
 57
 In support of their argument that a change of circumstances must be shown by plaintiffs to justify an order changing venue, Petitioners rely on cases where the plaintiffs made the motion for change of venue. See Harem-Christensen Corp. v. M.S. Frigo Harmony, 477 F.Supp. 694, 698 (S.D.N.Y.1979) (when plaintiff is the movant he must show change in circumstances to prevail); Harry Rich Corp. v. Curtiss-Wright Corp., 308 F.Supp. 1114, 1118 (S.D.N.Y.1969) (plaintiffs seeking change of venue must show change of circumstances). Here, the motion for a change of venue was not made by the plaintiffs. Petitioners have not cited any authority that provides that a plaintiff must show a change of circumstances before joining in a motion for change of venue. Petitioners have failed to show that the district court's consideration of the plaintiffs' views was a clear error of law.
 
 
 58
 Next Petitioners contend that Judge Browning erred in adopting Judge Bilby's subjective findings. The record does not show that Judge Browning adopted any of Judge Bilby's findings. Instead, the record shows that Judge Browning determined that a change of venue was required after reviewing all exhibits and affidavits presented to Judge Bilby.
 
 
 59
 Finally, Petitioners contend that the district court erred when it found that it was highly unlikely that an unbiased jury could be impaneled in the Western District of Washington. We disagree. There is sufficient evidence in the record to support the district court's finding that a jury in the Western District of Washington could not be fair and impartial in light of the pervasive, prejudicial publicity and the jurors' financial interest in the outcome of the action.
 
 
 60
 B. The District Court's Order Was Not a Clear and Indisputable Abuse of Discretion
 
 
 61
 Because the Petitioners have shown no clear error of law, we are left with the question whether the district court's exercise of its discretion in ordering a change of venue was so "wild," Kasey, 408 F.2d at 20, that the Petitioners' right to a writ of mandamus is 'clear and indisputable.' Daiflon, 449 U.S. at 36, 101 S.Ct. at 191 (quoting Will v. Calvert Fire Ins. Co., 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978)).
 
 
 62
 After reviewing all the evidence submitted by both sides, Judge Browning concluded that a change of venue to a place not permeated by pervasive, prejudicial publicity was necessary to accord the defendants a fair trial. The evidence showed that most of the potential jurors had been subjected to media publicity about the WPPSS bond default and many were concerned that a judgment against the utility defendants in this case would affect their utility rates. Thus, a substantial number of potential jurors had a financial interest in the outcome of the case. These circumstances do not demonstrate that the district court clearly and indisputably abused its discretion in determining that a change of venue was necessary in the interests of justice.
 
 VI
 Case No. 87-7355
 
 63
 The Columbia Defendants challenge the district court's order changing the place of trial to the District of Arizona (Tucson) on the ground that section 1404(a) limits transfer to a district where the action might have been brought as required by section 1404(a). They argue that the Tucson Division of the District of Arizona did not have personal jurisdiction over all the defendants. We disagree.
 
 
 64
 Federal jurisdiction in this litigation is pursuant to section 27 of the Securities Exchange Act of 1934 (Act) (15 U.S.C. Sec. 78aa). Section 27 grants jurisdiction in any action brought to enforce a liability or duty under the Act to the Federal Courts. "Under Section 27, a suit to enforce any liability or duty created under the Act may be brought either (1) in the district wherein the defendant is found or is an inhabitant or transacts business, or (2) in the district wherein any act or transaction constituting the violation occurred." Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1316 (9th Cir.1985).
 
 
 65
 In Vigman, we pointed out that there is a distinction between jurisdiction and venue. Id. at 1313. " '[J]urisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the convenience of the litigants.' " Id. (quoting Still v. Rossville Crushed Stone Co., 370 F.2d 324, 325 (6th Cir.1966) (per curiam) (emphasis added) (citations omitted) cert. denied, 387 U.S. 918, 87 S.Ct. 2030, 18 L.Ed.2d 970 (1967)). We also stated in Vigman that a district court must have both personal jurisdiction over the parties and venue to hear a case. Id. We next discussed when personal jurisdiction and venue would be present in a federal action brought under section 27. Id. at 1313-14.
 
 
 66
 Under Vigman, when a case is brought pursuant to section 27, as here, personal jurisdiction exists in any federal court if the defendant has minimum contacts with the United States. Id. at 1316. When a case has multiple defendants, venue can be established using the co-conspirator venue theory. Id. at 1317.
 
 
 67
 Under the co-conspirator venue theory, where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants. This is true even in the absence of any contact by some of the defendants in the forum district.
 
 
 68
 Id. The facts alleging the conspiracy are found in the complaint and need only show a nexus between the defendants and the scheme in which the defendants, as to whom venue is proper, were involved. Id. at 1318. Accord Semegen v. Weidner, 780 F.2d 727, 730 (9th Cir.1985).
 
 
 69
 There is no dispute that all of the defendants in the instant matter have minimum contacts with the United States. Thus, the District of Arizona (Tucson) has personal jurisdiction in this action. In addition, venue is proper in Arizona. An alleged act constituting a violation of the Act occurred in Arizona. The allegedly misleading financial statements, which are the basis of the claims of federal securities violations and are discussed below, were sent to all fifty states, including Arizona.
 
 
 70
 Chemical Bank's Second Amended Complaint contains allegations that all the defendant utilities actually participated in the preparation of the Official Statements sent to the prospective bondholders. The complaint also alleges that the Official Statements included materially misleading statements. The Class Plaintiffs' Third Amended Complaint alleges that all the defendants
 
 
 71
 individually and in concert, directly and indirectly, engaged and participated in or aided and abetted a plan and continuous course of conduct to conceal adverse material information about the need for, management, finances, and construction of project Nos. 4 and 5 ... [including] the making of or participating in the making of untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the supply system and Project Nos. 4 and 5, in light of the circumstances under which they were made, not misleading, and engaged in transactions, practices, and courses of business which operated as a fraud and deceit upon the purchasers of the bonds during the class period.
 
 
 72
 The Class Plaintiffs also allege that the Official Statements sent to the prospective bondholders contained materially false and misleading information regarding all the defendants. In addition, they allege that the utility defendants controlled the committees that produced the information in the Official Statements. Other allegations in the complaint point towards a concerted effort among all the defendants.
 
 
 73
 Accordingly, under Vigman, the district court's determination that there is both personal jurisdiction and venue in Tucson over the defendants is not clearly erroneous.
 
 CONCLUSION
 
 74
 The Petitioners and the Columbia Defendants have failed to demonstrate that this is an extraordinary case requiring imposition of the drastic remedy of mandamus. The district court's application of section 1404(a) to these facts was not clearly erroneous as a matter of law. The district court's decision to change venue in light of the evidence presented to it concerning the publicity that flowed from the default on the WPPSS bonds was not clearly and indisputably an abuse of discretion. The consolidated petitions are DENIED.
 
 
 
 *
 An order denying the petitions in cases No. 87-7236 and 87-7355 and dismissing the petition in case No. 87-7336, and stating that an opinion would follow, was filed on October 29, 1987
 
 
 [1]
 Among the other sites suggested by the parties were Los Angeles, San Diego, Phoenix, San Francisco, Salt Lake City, Reno, Denver, Sacramento, and Tucson
 
 
 [2]
 All the parties in these consolidated petitions concede that Bauman factor 4 is not applicable to this case. The Columbia Defendants contend that factor 5 does apply here. For the reasons stated below, we hold that there are no issues of first impression presented in the Columbia Defendants' petition. The remaining petitioners concede that factor 5 does not apply to their petitions