ASSOCIATED BUSINESS TELEPHONE
SYSTEMS CORPORATION,
Plaintiff,

v.

Leo J. DANIHELS, Defendant.

Civ. A. No. 92–3943.

United States District Court,
D. New Jersey.

Aug. 20, 1993.

Stuart A. Wilkins, Berlin, NJ, for plaintiff.

Guy Michael, Brown & Michael, P.C., Atlantic City, NJ, for defendant.

## OPINION

GERRY, Chief Judge.

This is a diversity action between plaintiff, Associated Business Telephone Systems Corporation ("ABTS"), whose principal place of business is in New Jersey, and defendant, Leo J. Danihels, who is domiciled in Nevada. The parties are presently before the court upon motion of defendant to dismiss the complaint for lack of subject matter jurisdiction and for lack of personal jurisdiction. In the alternative, defendant seeks transfer of this action to Nevada pursuant to the doctrine of forum non conveniens.

### BACKGROUND

ABTS is a telephone systems service corporation incorporated and having its principal place of business in New Jersey. In

1990, ABTS entered into a telephone servicing contract ("the Contract") with the Ramada Las Vegas Inn ("the Inn") situated in Las Vegas, Nevada, and the Inn's owner, Jesse Wright. The contract was for a term of twelve years and required, among other things, that ABTS install a telephone system at the Inn, that the Inn collect and remit to ABTS the monthly charges arising from guest usage of the system, that those funds be held in trust for ABTS, and that the Inn insure the system. The contract also contained a liquidated damages provision and stated that New Jersey law would govern its interpretation and enforcement.

The Inn experienced financial difficulties and defendant, a secured creditor of Wright and the Inn, was appointed Interim Receiver of the Inn on January 14, 1992. In addition to the usual powers granted to receivers, defendant was specifically vested with the power to manage the Inn, to collect rents and profits, to pay expenses, and to maintain and preserve the Inn pending foreclosure proceedings. Shortly thereafter, ABTS notified defendant that the Inn was approximately $14,000 in arrears for payments due under the Contract and that the telephone system was therefore scheduled for disconnection unless defendant remitted the outstanding debt.

Defendant sent ABTS $4,042.57, and ABTS agreed not to have the system shut down. Plaintiff alleges that defendant promised that he would be bound by and make all payments due under the Contract during the period of receivership. Plaintiff also maintains that defendant stated that he could not as receiver assume the Contract, but, if defendant was successful in taking over the property as second mortgage holder after foreclosure, he would assume the contract at that time. Defendant purchased insurance and began making the monthly payments.

ABTS further alleges that sometime later during the receivership, ABTS again sought to terminate the Contract because the original arrearage was still outstanding, because defendant had yet to assume the Contract, and because the foreclosure was taking much longer than defendant had initially predicted. ABTS maintains defendant responded by as-suring ABTS that he was definitely going to take over the Inn following foreclosure. Based upon such representations, ABTS states that it continued to perform under the Contract and upgraded the system at a cost of $15,000 to $20,000.

Defendant subsequently failed to pay the invoices for the months of June and August 1992, which amounted to $8,638.66. These latter invoices were not paid because of a dispute between the parties over whether the defendant's original $4,042.57 payment was a good faith deposit to keep the phones operable or should have been credited to the monthly invoices as they came due. On August 4, 1992, the Inn was sold at a trustee sale and acquired by someone other than defendant. After the sale, defendant sent ABTS two payments totalling $4,596.09, representing the difference between the monies defendant believed should have been credited to his account and the remaining balance of the June/August invoices.

ABTS instituted this action alleging breach of contract, conversion of the unremitted funds, and fraud. Defendant moves to dismiss contending that ABTS cannot meet the requisite jurisdictional amount in controversy and for lack of personal jurisdiction.

### DISCUSSION

### I. Amount in Controversy

■ This court has jurisdiction over diversity actions only if they involve more than $50,000 in controversy. 28 U.S.C. § 1332. Although the complaint alleges more than $50,000 in damages, defendant argues that in fact the amount in controversy is much less.

■ The amount claimed in the complaint is controlling unless, upon the face of the pleadings or proofs submitted, it "appears to a legal certainty that the claim is really for less." *St. Paul Mercury Indem. Co. v. Red Cab. Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 589–90, 82 L.Ed. 845 (1938); *Smithers v. Smith,* 204 U.S. 632, 642, 27 S.Ct. 297, 299, 51 L.Ed. 656 (1907). The existence of a perfect defense that might reduce the recovery below the requisite amount does not defeat jurisdiction. *Id.*

Once challenged, however, it is the plaintiff's burden to show that it does not appear to a legal certainty that the claim does not satisfy the jurisdictional amount. *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); *Nelson v. Keefer,* 451 F.2d 289 (3d Cir.1971).

To demonstrate that the amount it alleged in the complaint is made in good faith and not legally certain to be for less, ABTS relies on the liquidated damages clause in the Contract, which calls for damages in excess of $500,000; the amount it would be entitled to on its conversion claim, which could include punitive damages under Nevada Revised Statute § 42.005 (1991); and reliance damages of fifteen to twenty thousand dollars on its fraud claim, under which ABTS also seeks punitive damages.

Defendant argues that he was not bound by the Contract because he agreed only to make payments in accordance with the pre-existing contract, not to be bound by any other terms. Alternatively, he contends that if he was bound by the entire Contract, he did not breach the Contract because he remitted all that was owed to plaintiff. Either way, he maintains that he cannot be liable under the Contract's liquidated damages clause. Defendant also contends that he cannot be liable for punitive damages because all of his actions were done in good faith.

Defendant's arguments are premature. That defendant may have a valid defense to the contract claim does not demonstrate that the claim was made in bad faith. Moreover, though it is not clear that a $500,000 liquidated damages provision will be enforceable on a contract involving approximately $4,000 a month over an eight month period, the liquidated damages clause is sufficient to satisfy the plaintiff's burden on this motion. We cannot say that it is legally certain that the clause is unenforceable. Finally, the fact that punitive damages may be available on the remaining claims similarly precludes us from finding it legally certain that plaintiff's damages will not exceed $50,000. Like defendant's former arguments, his contention that he did not have the requisite mental state to justify punitive damages is premature. These issues are more properly deter-

mined on motion for summary judgment or at trial. We hold, therefore, that ABTS has met its burden to invoke this court's subject matter jurisdiction.

## II. Personal Jurisdiction

■ Defendant also challenges this court's exercise of personal jurisdiction. A court acquires personal jurisdiction over an out-of-state defendant where that defendant is properly served, and exercise of jurisdiction does not otherwise offend the constitution. Federal Rule of Civil Procedure 4(e) requires us to examine the New Jersey Long Arm statute to assess the scope of service over an out-of-state defendant. That statute, N.J.Rule 4:4–4(c)(1), grants jurisdiction to the same extent as allowed by the United States Constitution. *Avdel Corp. v. Mecure,* 58 N.J. 264, 277 A.2d 207, 209 (1971). The only constitutional limit placed upon a federal court's exercise of personal jurisdiction is the Due Process Clause, which requires that a defendant have sufficient minimum contacts with the forum state such that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The contacts between a defendant and the forum must demonstrate that the defendant "has [purposefully] availed itself of the benefits and protection of that state," and that a defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 297, 100 S.Ct. 559, 563, 567, 62 L.Ed.2d 490 (1980); *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) (defendant must "purposefully avail" itself of privilege of acting within the forum). Accordingly, a "defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or [based upon] the 'unilateral activity of another person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted). Those who deliberately " 'reach out' " and " 'create continuing relationships and obligations with citizens of another state,' "

however, will be subject to that state's regulations and sanctions for consequences arising from those relationships. *Id.* at 473, 105 S.Ct. at 2182 (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). Nevertheless, "fair play and substantial justice" may preclude jurisdiction even where the defendant has "purposefully engaged in forum activities." *Id.* at 477–78, 105 S.Ct. at 2184–85. The court must engage in a fact specific inquiry wherein there will be no clear cut answers. *Id.* at 486, 105 S.Ct. at 2189. This is an area of law in which the " 'greys are dominant and even among them the shades are innumerable.' " *Id.* at 486 n. 29, 105 S.Ct. at 2190 n. 29 (quoting *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978)). Once challenged, it is plaintiff's burden to demonstrate the existence of sufficient contacts to establish personal jurisdiction. *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir.1992); *Compagnie Des Bauxites De Guinee v. L'Union Atlantique S.A. D'Assurances,* 723 F.2d 357, 362 (3d Cir.1983).

▮ Plaintiff does not dispute defendant's assertion that he has never set foot in New Jersey and has had no prior dealings with New Jersey residents. Plaintiff contends, however, that defendant's agreement to be bound by the Contract terms during his receivership is sufficient by itself to invoke either general or specific *in personam* jurisdiction over defendant.[1] General *in personam* jurisdiction arises out of a defendant's continuous and systematic conduct in the forum that is unrelated to the subject matter of the lawsuit. Specific *in personam* jurisdiction, however, arises when the particular cause of action at issue arose out of the defendant's contacts with the forum. *See Provident Nat'l Bank v. California Federal*

*Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987).

We find defendant has insufficient contacts with New Jersey to justify the exercise of general *in personam* jurisdiction. Plaintiff has alleged no ongoing contacts outside of the alleged contract. Defendant has never been to New Jersey, has no personal connection to New Jersey, and has had no business dealings with New Jersey residents other than the alleged contract with ABTS. His entry into this single, short-term contract does not establish the necessary "continuous and systematic" contacts with the forum. Therefore, we now turn to whether ABTS has demonstrated sufficient contacts to invoke specific jurisdiction.

▮ The Supreme Court has stated that it is the business relationship evidenced by a contract, rather than the contract itself, that will serve as the basis for *in personam* jurisdiction. *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185–86. Accordingly, a contract between a forum resident and an out-of-state party will not automatically establish sufficient contacts with the forum to justify *in personam* jurisdiction. *Id.* at 478, 105 S.Ct. at 2185. When examining an assertion of jurisdiction based upon a contract, the court must examine the character of any prior negotiations, the terms of the contract, the parties' actual dealings with each other, and the contemplated future consequences. *Id.* at 479, 105 S.Ct. at 2186. The contract in *Burger King* for example, which the Supreme Court found sufficient to invoke personal jurisdiction, was negotiated over a five-month period; was intended to run for twenty years; involved continuing and widespread contacts with the forum; provided that the forum's law would govern; and required some travel to and training in the forum. *Id.* at 466, 478–86, 105 S.Ct. at 2185–89. Keep-

---

1. ABTS relies on a disputed contract as the basis for jurisdiction. We note that plaintiff has adequately alleged that defendant entered into a contract with plaintiff that was to last for the time he was receiver of the Inn and whose terms were derived from the existing contract between ABTS and the Inn and its former owner. Although the existence of this contract is disputed, where a jurisdictional issue cannot be decided without ruling on the merits, the case must proceed to trial. *Wade v. Rogala,* 270 F.2d 280, 285

(3d Cir.1959) (citations omitted); *see also Carteret Savings Bank, F.A. v. Shushan,* 954 F.2d 141, 148 (3d Cir.1992) (premature on motion to dismiss for lack of jurisdiction to decide that tort claim was pled fallaciously to support personal jurisdiction; issues of fact left for trial; Rule 11 sanctions adequate to deter fallacious pleading). Thus, though ABTS must prove the existence of the contract at trial, for purposes of this motion we must assume that a contract existed.

ing in mind the quintessential determination—whether defendant purposefully availed himself of forum benefits so that exercise of jurisdiction will not offend notions of fair play—we now examine the instant contract under the *Burger King* guidelines.

First, we find that there were minimal prior negotiations between the parties. Defendant did not seek to establish this contract on his own initiative nor were there any negotiations involving the contract terms. Instead, defendant, while under the court-imposed duty upon him as receiver to keep the Inn operational, was contacted by ABTS and threatened with the dismantling of the phone system unless payments due under the previously existing contract were made. ABTS does not allege that any bargaining occurred over potential terms. This situation is akin to a party's entrance into a contract of adhesion, and the parties' conduct cannot be viewed as negotiations as that term is commonly understood. The defendant's failure to initiate the contact with ABTS or take affirmative action to establish connections with New Jersey and the complete lack of discussion regarding the specifics of the contract terms seriously undermines any characterization of defendant's conduct as purposeful availment of New Jersey benefits or "reaching out" to a New Jersey resident. *Cf. Allied Leather Corp. v. Altama Delta Corp.*, 785 F.Supp. 494, 500 (M.D.Pa.1992) (initiation of contact and bargained for terms important in analyzing prior negotiations to determine propriety of *in personam* jurisdiction).

Second, the contract was intended to be of relatively short duration. ABTS acknowledges that it was surprised and concerned that the receivership was lasting eight months. This demonstrates that, at the time of the alleged contracting, the parties expected the agreement to end somewhat sooner. Thus, although the contract required ABTS to service the equipment when necessary, required ABTS to monitor phone usage, and provided that ABTS was to receive payment from defendant and remit payments due to the local and long distance telephone companies servicing the hotel, the continuing nature of the obligations and foreseeable conse-

quences were necessarily limited. While defendant cannot be characterized as a one time purchaser of goods, which would clearly preclude personal jurisdiction, *see Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir. 1986), neither can he be characterized as entering into the type of long-term agreement addressed in *Burger King*. *See also Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) (suggesting that "isolated," "short-lived" transactions insufficient to give rise to personal jurisdiction).

Third, while we note the contract provision requiring the application of New Jersey law, this factor alone is insufficient to render the contract a sufficient basis for our exercise of *in personam* jurisdiction. *Burger King*, 471 U.S. at 482, 105 S.Ct. at 2187. The *Burger King* Court viewed the choice of law provision, when coupled with the twenty-year contract term, merely as reinforcement of the defendants' intentional affiliation with the forum. Here, as discussed above, we have no such long-term contract. Additionally, the lack of negotiations regarding this term further erodes its value as evidence of defendant's deliberate availment of rights and protections under New Jersey law.

ABTS relies upon *Associated Business Telephone Sys. Corp. v. Greater Capital Hotel Corp.*, Civ. No. 87–2697 (D.N.J. Aug. 26, 1987) and *General Elec. Capital Corp. v. Integra*, Civ. No. 90–3700 (D.N.J. Mar. 11, 1992) wherein similar contracts were held sufficient to establish *in personam* jurisdiction over defendants having no other contacts with New Jersey. We find, however, that these cases are distinguishable because they involved long-term contracts. Moreover, the former case dealt with a contract that the defendant entered into in an open market, and the latter involved a contract that had been assumed by the defendant. In the instant case, ABTS does not allege that defendant assumed the entire contract and stepped into the shoes of the previous owner. Instead, its breach of contract action is based upon its allegation that defendant agreed only to be bound by the Contract terms during the period of receivership, which both

parties state they expected to last only a short time. In essence, ABTS is arguing that a separate contract was entered into that incorporated all the terms of the former Contract excepting the contract length. The defendant entered a contract of limited duration and did so under a legal obligation as receiver to maintain operation of the Inn.

Thus, not only are the mutual obligations and rights involved here of a much less significant nature than those created by the contracts addressed in the cases cited by ABTS, the requisite "purposeful availment" is missing. There is no allegation that the Contract was assumed, which might impute the purposeful conduct of defendant's predecessor to defendant. As discussed earlier, ABTS alleges only that defendant entered into a new short-term contract based upon the old Contract's terms. Although ABTS correctly noted at oral argument that the receiver could have rejected the contract if it was not in the best interests of the Inn, defendant's failure to make such a rejection cannot be viewed as deliberate reaching out to the New Jersey plaintiff. We do not believe that exercise of personal jurisdiction based solely upon an out-of-state receiver's agreement to honor an existing contract for a short duration would comport with "fair play and substantial justice" as required by *International Shoe*. Thus, on the peculiar facts presented here, we hold that we cannot exercise *in personam* jurisdiction over the defendant.[2]

■ In light of our disposition of the jurisdictional issue, we need not address defendant's motion to transfer this action to Nevada based upon forum non conveniens. Considering defendant's willingness to adjudicate this action in Nevada, however, rather than dismiss, we will transfer the action to the District of Nevada pursuant to 28 U.S.C. § 1404(a).[3] That district clearly has personal jurisdiction over the defendant as he is domiciled in Nevada.

### CONCLUSION

ABTS has established subject matter jurisdiction over this action. This court does not, however, have *in personam* jurisdiction over defendant. Rather than dismiss the action, the action will be transferred to the District of Nevada. The accompanying order has been entered.

### ORDER

This matter having come before the court upon motion of defendant Leo J. Danihels to dismiss plaintiff Associated Business Telephone Systems Corporation's complaint for lack of subject matter and personal jurisdiction, and the court having considered the submissions, and for good cause shown;

It is, this 20th day of August 1993, hereby ORDERED that defendant's motion is DENIED as to lack of subject matter jurisdiction. It is further ORDERED that defendant's motion as to lack of personal jurisdiction is GRANTED IN PART AND DENIED IN PART. This court, having no personal jurisdiction over defendant, hereby transfers the above captioned action to the District Court of Nevada pursuant to 28 U.S.C. § 1404(a).

---

**2.** The court notes that plaintiff raised the possibility for the first time at oral argument that personal jurisdiction could be based upon defendant's alleged promise to assume the Contract after purchasing the hotel. That promise is the basis of plaintiff's claim for fraud and was not pled as part of plaintiff's breach of contract claim. *Compare* Verified Complaint ¶¶ 23–25 *with* ¶¶ 30–34. This argument was not briefed nor was it developed at oral argument beyond that basic assertion. Moreover, it was raised in the context of bolstering plaintiff's position that the Contract was voluntarily entered into rather than as a separate basis for jurisdiction. It is therefore unclear whether plaintiff intended to assert jurisdiction based upon the fraud claim or not. Under these circumstances, defendant has not had an opportunity to address this argument and it would be inappropriate for this court to base jurisdiction on such grounds.

**3.** This court has the power to transfer pursuant to section 1404(a) *sua sponte. See Washington Pub. Utilities Group, et al. v. United States Dist. Court of Washington,* 843 F.2d 319 (9th Cir. 1987); *I–T–E Circuit Breaker Co. v. Becker,* 343 F.2d 361 (8th Cir.1965).