Elizabeth HAISCH, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

**ALLSTATE INSURANCE COMPANY,
Defendant.**

No. CIV–96–1647–PHX–ROS.

United States District Court,
D. Arizona.

Oct. 22, 1996.

---

Steve W. Berman, Hagens & Berman, Seattle, WA, Richard Anthony Dillenburg, Van O'Steen & Partners, Mesa, AZ, for plaintiff.

Keith B. Forsyth, Evan S. Goldstein, Grossman O'Grady & McGoldrick, Scottsdale, AZ, for defendant.

## ORDER

SILVER, District Judge.

Plaintiff Elizabeth Haisch moves to remand this action to the state court from which it was removed by Defendant Allstate Insurance Company.

### I. BACKGROUND

On February 16, 1996, Plaintiff, an Arizona resident, individually and on behalf of a putative class of Allstate Insurance Company insureds who paid premiums for Allstate Medical Payments ("Med Pay") coverage and were members of a Health Care Service Organization ("HCSO") or otherwise had health insurance from February 16, 1993 to the present,[1] filed this action in the Superior Court of the State of Arizona in and for Maricopa County against Defendant Allstate Insurance Company, an Illinois corporation. As amended on June 14, 1996, the complaint alleges that while Defendant offers to all of its Arizona automobile policyholders optional Med Pay automobile coverage, under which

---

**1.** Although this case has not been certified as a class action, this Court will assume that it has been certified solely for the purpose of determining jurisdiction. *See City of Inglewood v. City of Los Angeles,* 451 F.2d 948, 951 (9th Cir.1971).

Plaintiff contends that the class consists of "thousands of persons" located throughout the State of Arizona. (Am.Compl. ¶ 15.)

Defendant promises to pay all reasonable expenses of its insured arising out of necessary medical treatment following an accident, Defendant uniformly refuses to pay for medical expenses incurred by its insured if those expenses are already covered by the insured's HCSO or health insurance. (Am. Compl. ¶¶ 2–3, 23.) The complaint alleges that Med Pay's failure to cover any medical expenses already covered by the insured's HCSO or health insurance renders such coverage useless to insureds who belong to an HCSO or health insurance plan.[2] (Am. Compl. ¶ 4.) The complaint further alleges that although Defendant knows about the uselessness of Med Pay coverage to its insureds who belong to an HCSO or a health insurance plan, Defendant has offered and continues to offer Med Pay coverage as an option to its insureds and fails to disclose that it will refuse to pay for any medical expenses already covered by the insured's HCSO or health insurance. (Am.Compl. ¶¶ 5, 30.) The complaint alleges that the amount in controversy does not exceed $50,-000 for Plaintiff Haisch or any member of the putative class. (Am.Compl. ¶ 12.) The complaint, which alleges negligent misrepresentation, misrepresentation, A.R.S. § 20–443, and violation of the Arizona Consumer Fraud Act, A.R.S. § 44–1521, seeks unspecified compensatory and punitive damages, declaratory and injunctive relief, attorney's fees, expert witness fees, and costs.[3] (Am.Compl. at 11.)

On July 12, 1996, Defendant filed a Notice of Removal pursuant to 28 U.S.C. § 1441 alleging diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff now seeks to remand this action on the grounds that Defendant has failed to meet the $50,000 amount in controversy requirement. Plaintiff also seeks costs and attorney's fees incurred as a result of the removal.

## II.  DISCUSSION

■  A federal court may exercise removal jurisdiction over a case only if jurisdiction existed over the suit as originally brought by the plaintiff. 28 U.S.C. § 1441(a). A strong presumption exists against removal jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). The removing party bears the burden of establishing that federal subject matter jurisdiction exists. *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1195 (9th Cir.1988).

### A.  Timeliness of Notice of Removal

■  As an initial matter, this Court recognizes that Defendant's Notice of Removal would be untimely if Plaintiff had served or otherwise provided Defendant with a copy of the original complaint in this case more than 30 days prior to the filing of the Notice of Removal. 28 U.S.C. § 1446(b). However, there is no indication in the Maricopa County Superior Court docket sheet, which was included in the record, that the original complaint was ever served on or otherwise provided to Defendant. Moreover, Plaintiff has not raised the timeliness of the Notice of Removal as a ground for remanding this case. As such, this Court concludes that Plaintiff has waived the timeliness of the Notice of Removal as a basis for remand. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir.1980) (party may waive objection to untimely removal petition by sitting on one's rights).

### B.  Amount in Controversy Requirement

■  Diversity jurisdiction is proper only if the matter is between citizens of different states and the amount in controversy exceeds the sum of $50,000. 28 U.S.C. § 1332. There is no dispute that the parties in the instant case are diverse.[4] Thus, the sole

---

2.  Plaintiff alleges that the only benefits available to insureds who select Med Pay coverage and belong to an HCSO or a health insurance plan are reimbursement for chiropractic care and co-payments. (Am.Compl. ¶¶ 6, 29.)

3.  Plaintiff's original complaint alleged claims for the tort of bad faith, breach of contract, misrep-

resentation and violation of the Arizona Consumer Fraud Act.

4.  Defendant admits that Plaintiff is a citizen of Arizona and that Defendant is incorporated in Illinois. (Def.'s Notice of Removal ¶¶ 5–6.) Only named parties have to meet the diverse citizenship requirement. *See Supreme Tribe of Ben–Hur*

issue to be resolved is whether the amount in controversy exceeds $50,000 for Plaintiff and each class member.

■ In a class action suit, each plaintiff's claim must satisfy the jurisdictional amount requirement. *Zahn v. International Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973). If the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,-000. *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 862 (9th Cir.1996); *Gaus*, 980 F.2d at 566–67. The defendant must set forth evidence establishing that it is more likely than not that the amount in controversy exceeds the required amount. *Sanchez*, 95 F.3d at 862 (quotation and citation omitted). Conclusory allegations that the damages are in excess of the jurisdictionally required sum are insufficient. *Gaus*, 980 F.2d at 567.

In the instant case, because Plaintiff's complaint does not allege a specific amount of damages,[5] Defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000 for Plaintiff and each class member.

### Actual Damages

Actual damages in this case is likely to be quite small per plaintiff. Plaintiff seeks to recover a return of her Med Pay premiums and interest accrued therefrom. (Am.Compl. ¶¶ 7, 37, 41, 45.) Plaintiff Haisch contends in the Motion to Remand that she personally expended $968 in Med Pay premiums over a six-year period. (Pl.'s Mot. Remand at 2.) Thus, the actual damages alleged by Plaintiff Haisch amount to approximately $1,000.00. Defendant has failed to dispute this figure or otherwise argue that any of the class members' actual damages are significantly higher. Thus, Defendant has failed to show that any of the class members' actual damages will significantly contribute towards meeting the $50,000 jurisdictional threshold.

*v. Cauble*, 255 U.S. 356, 366, 41 S.Ct. 338, 342, 65 L.Ed. 673 (1921).

### Injunctive Relief

With respect to Plaintiff's request for injunctive relief, she merely seeks that Defendant "cease and desist from engaging in the conduct" alleged in the complaint. (Am. Compl. at 11.) Because the Ninth Circuit has firmly rejected the examination of the potential detriment accruing to Defendant as a result of the equitable relief sought, *see Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir.1977), this Court must examine the potential benefits arising out of the injunctive relief that might accrue in favor of Plaintiff and the class. However, because Defendant has failed to address the effect of equitable relief on the amount in controversy requirement, it would be speculative to calculate the value accruing to Plaintiff and the class from the equitable relief sought. Thus, this Court is not persuaded that the equitable relief sought by Plaintiff would significantly contribute towards establishing diversity jurisdiction.

### Attorney's Fees and Costs

Although attorney's fees and costs could be substantial, a potentially sizeable class action lawsuit, Defendant completely fails to address this matter in either its Notice of Removal or Response to Plaintiff's Motion to Remand. Moreover, as this Court's analysis of punitive damages will demonstrate, it is unlikely that the potential attorney's fees will be so immense that the required amount in controversy with respect to each of the putative class members can be met. *See Karofsky v. Abbott Lab.*, 921 F.Supp. 18, 20 (D.Me. 1996) (projected attorney's fees must be prorated across entire class). In any event, without any briefing from Defendant, this Court will not speculative with respect to whether attorney's fees and costs would significantly contribute towards establishing diversity jurisdiction.

### Punitive Damages

■ With respect to the class members'

5. Plaintiff alleges that the class members have been damaged in an amount to be determined at trial. (Am.Compl. ¶¶ 37, 41, 45.)

claims for punitive damages,[6] (Am.Compl. ¶ 7), Defendant alleges that extraordinarily large punitive damages awards have been awarded against insurance companies in cases involving fraud. (Def.'s Notice of Removal ¶ 9.) Defendant also contends that its wealth and financial resources vastly increase the likelihood that a potential punitive damages award would be "considerable." (Def.'s Notice of Removal ¶ 10.) In essence, Defendant states that merely because extraordinary punitive damages have been awarded in similar cases and the size of its financial resources constitute sufficient evidence that the amount in controversy requirement in the instant case has been met for Plaintiff and each of the class members. (Def.'s Opp'n Mem. at 6.) This Court disagrees. It would be inherently speculative for this Court to conclude that the amount in controversy requirement can be met by simply asserting that large punitive damage awards have been awarded in the past against insurance companies faced with allegations of fraud. As Plaintiff points out, Defendant has failed to articulate why the particular facts that are alleged in the instant action might warrant extraordinary punitive damages.

Moreover, *Bolling v. Union Nat'l Life Ins. Co.,* 900 F.Supp. 400 (M.D.Ala.1995), the case upon which Defendant places primary reliance for support that courts look to awards rendered in similar cases to determine whether the amount in controversy requirement has been met, is inapposite. In *Bolling,* a case involving a single plaintiff and no class action, the district court stated that "[i]n determining whether the jurisdictional level has been met, the court should look for guidance to decisions rendered in cases on the same type of suit." 900 F.Supp. at 404. Even if this Court were to apply the rule in *Bolling* to the instant case,[7] Defendant has failed to set forth any case authority indicating that a punitive damages award large enough to meet the jurisdictional requirements of each of the class members here can be or has been rendered in Arizona or any other jurisdiction. To illustrate, Plaintiff contends that the putative class in this action could be comprised of 100,000 members.[8] (Pl.'s Mot. Remand at 3.) In order for an award of punitive damages to satisfy, by itself, the jurisdictional requirements for 100,000 class members, the punitive damages award would have to be approximately $5.0 billion dollars.[9] There is absolutely no basis on the record presented to this Court to conclude that Plaintiff and the putative class will be awarded any amount approaching this gargantuan sum. Neither of the Arizona cases cited by Defendant as examples of the purported recent trend towards extraordinary punitive damages awards, *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 502, 733 P.2d 1073, 1085 (Ariz.) (affirming jury verdict for $3.5 million punitive damages award against insurance company), *cert. denied,* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987), and *Melancon v. USAA Casualty Ins. Co.,* 174 Ariz. 344, 348, 849 P.2d 1374, 1378 (Ariz.App. 1992) (reversing $2.0 million punitive damages award), support the proposition that Defendant is potentially liable for a $5.0 billion judgment. Because any punitive damages award in the instant case would be attributed to each class member on a pro rata basis, *Poindexter v. National Mortgage Corp.,* No. 91–C–4223, 1991 WL 278454, at *2 (N.D.Ill. Dec. 23, 1991) ("punitive damages

6. Punitive damages can be recovered for violations of the Arizona Consumer Fraud Act. *Holeman v. Neils,* 803 F.Supp. 237, 242 (D.Ariz. 1992).

7. Defendant has failed to point to any Ninth Circuit case, which suggests that courts should look to the existence of large punitive damages awards in similar yet unrelated cases to determine whether the preponderance of evidence standard applicable in removal cases has been met.

8. Defendant, the third largest automobile insurer in Arizona, William H. Carlile, *Arizona Auto Rates Rise to 15th in U.S., Average Annual Premiums Run $810,* Ariz. Republic, May 9, 1996, at E1, does not dispute the possibility that the putative class might comprise 100,000 members.

9. Although this Court recognizes that any recovery of actual damages or attorney's fees would contribute towards meeting the amount in controversy requirement, it is unlikely that the recovery of such items in the instant case would have a significant impact towards establishing the jurisdictional requirements for the entire class.

and attorney's fees are attributed to each plaintiff and class member on a pro rata basis where the claims are 'separate' and 'independent'"), it is highly speculative to assume that the putative class's claims for punitive damages would significantly affect Defendant's attempt to meet the $50,000 jurisdictional requirement for Plaintiff and each of the class members. Thus, this Court concludes that Defendant has failed to meet its burden of producing sufficient evidence that the amount in controversy is greater than $50,000 for Plaintiff and each of the class members.

## C. Aggregation of Punitive Damages Claims

█ In *Snyder v. Harris,* 394 U.S. 332, 335–42, 89 S.Ct. 1053, 1056–59, 22 L.Ed.2d 319 (1969), the Supreme Court reaffirmed the doctrine that separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement. The Court noted, however, that aggregation has been permitted in two situations: (1) "in cases in which a single plaintiff seeks to aggregate two or more of [her] own claims against a single defendant," and (2) "in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder,* 394 U.S. at 335, 89 S.Ct. at 1056.

Defendant argues that each of the class members' claims for punitive damages meet the amount in controversy requirement if aggregated. (Def.'s Opp'n Mem. at 9.) In support, Defendant relies primarily upon *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir.1995) (2–1 decision), and *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir.1996). In *Allen,* the Fifth Circuit Court of Appeals held that a punitive damages award under Mississippi law could be aggregated to satisfy the jurisdictional amount requirement because punitive damages are "undivided claims of right with a potentially separable award." 63 F.3d at 1334. In *Tapscott,* the Eleventh Circuit concurred with

the Fifth Circuit's analysis in *Allen* by focusing on the nature of punitive damages under Alabama law and concluding that the punitive damages sought in that case may be considered in the aggregate for jurisdictional purposes. *Tapscott,* 77 F.3d at 1359.

This Court declines to follow *Allen* and *Tapscott* for several reasons. First, under Ninth Circuit law, claims constitute a common and undivided interest only if the plaintiffs derive such claims from rights held in group status. *Eagle v. American Tel. and Tel. Co.,* 769 F.2d 541, 546 (9th Cir.1985), *cert. denied,* 475 U.S. 1084, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986); *Potrero Hill Community Action Committee v. Housing Authority,* 410 F.2d 974, 978 (9th Cir.1969). Because neither of the courts in *Allen* and *Tapscott* applied the group status test as a relevant factor to be considered in determining whether claims constitute a common and undivided interest, those cases are in conflict with the relevant inquiry mandated by the Ninth Circuit in *Eagle* and *Potrero Hill.*[10]

Second, in the instant case, each class member's claim for punitive damages is derived from conduct on the part of Defendant that allegedly injured each class member separately and individually. *Bernard v. Gerber Food Products Co.,* 938 F.Supp. 218, 222–23 (S.D.N.Y.1996). Each class member could have advanced a separate punitive damages claim in a separate lawsuit without affecting the class claim. *Hasek v. Chrysler Corp.,* No. 95–C–579, 1996 WL 48602, at *4 n. 5 (N.D.Ill. Feb. 5, 1996). To illustrate, in *Bishop v. General Motors Corp.,* 925 F.Supp. 294, 298 (D.N.J.1996), the court distinguished *Tapscott* by noting that the paradigmatic common and undivided interest cases "are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy." The district court contrasted these paradigmatic cases with punitive damages cases as follows:

> [The paradigmatic cases] are matters that cannot be adjudicated without implicating the rights of everyone involved with the

**10.** Although the purpose of punitive damages was a key factor to the courts in *Allen* and *Tapscott* in determining the character of the in-

terest asserted, the Ninth Circuit has focused instead on the source of the plaintiffs' claims. *Eagle,* 769 F.2d at 546.

res. This is not true on punitive damages. Individual plaintiffs can sue separately for punitive damages, and whether they prevail on the merits or not, whether they are awarded punitive damages or not, the rights of subsequent plaintiffs remain unaffected.

*Id.* This Court agrees with the reasoning in *Bishop.* The right to punitive damages is held by each plaintiff in this case individually and not through any group status. Defendant has failed to provide any contrary authority in this Circuit, Arizona case law, or statutory authority, which supports the proposition that punitive damage claims are brought by individuals who possess a common and undivided interest in the claim.

Third, though the Ninth Circuit has not addressed the specific issue of whether punitive damages constitute a common and undivided interest that can be aggregated for jurisdictional purposes, the Ninth Circuit has held in *Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), that attorney's fees should not be aggregated to meet the amount in controversy requirement in a class action despite the contention that the potential fees should be treated as a common fund. Contrary to Defendant's assertion, it is reasonable to construe *Goldberg* as not restricted to merely attorney's fees, but for the broader proposition that class members, whose "claims fall short [of the amount in controversy requirement] cannot satisfy the requirement by aggregation of claims." *Goldberg,* 678 F.2d at 1367. Applying this construction of *Goldberg* to the instant case, this Court is justified in concluding that the Ninth Circuit, in all likelihood, would not allow the aggregation of the putative class's punitive damages claims for the purpose of establishing diversity jurisdiction.

Fourth, the overwhelming majority of district courts within the Ninth Circuit have refused to aggregate punitive damages for the purpose of meeting the amount in controversy jurisdictional requirement in putative class actions. *See, e.g., Villarreal v. Chrysler*

*Corp.,* No. C–95–4414–FMS, 1996 WL 116832, at *3 (N.D.Cal. Mar. 12, 1996) (holding that aggregation of punitive damages is unwarranted because plaintiffs asserted separate and distinct rights); *Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709 (C.D.Cal.1995) (rejecting the reasoning of *Allen* ); *Smiley v. Citibank, N.A.,* 863 F.Supp. 1156, 1163 (C.D.Cal.1993) (refusing to allow the aggregation of punitive damages because putative members of the class had a separate and distinct interest in a share of the punitive damages that the named plaintiff was attempting to recover); *Kasky v. Perrier Group of Amer., Inc.,* 1991 WL 577038, at *2 (S.D.Cal. Sept. 16, 1991) (finding that the punitive damages claim cannot be aggregated because the right to punitive damages is held by each plaintiff individually).

Fifth, the implications of *Allen* and *Tapscott* appear to conflict with the purpose of requiring the minimum amount in controversy. Extending the exception to the non-aggregation rule would allow practically any sizeable class of plaintiffs to invoke diversity jurisdiction regardless of how miniscule their claims might be. The likelihood that such plaintiffs might recover only de minimis actual and punitive damages would not affect this result. Thus, it appears that the rule in *Allen* and *Tapscott* undermines the underlying bases for imposing the amount in controversy requirement, namely, to limit the federal docket to substantial cases, *Bishop,* 925 F.Supp. at 299, and "to keep the diversity caseload of the federal courts under some modicum of control," *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 (3d Cir.), *cert. denied,* 510 U.S. 964, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993).[11]

Therefore, because there is little doubt from the allegations in the Complaint that the members of the putative class here have brought their claims together in a single suit for convenience and economy, *Zahn,* 414 U.S. at 294, 94 S.Ct. at 508, and not because their claims derived from rights held in group status, this Court finds that Defendant cannot aggregate the punitive damages claims of

11. On the other hand, the separate and distinct interest analysis of the Ninth Circuit restricts the federal docket to cases in which each plaintiff's claim satisfies the jurisdictional amount requirement. *Zahn,* 414 U.S. at 301, 94 S.Ct. at 512.

the class members in order to satisfy the amount in controversy requirement. As such, Defendant has failed to meet its burden of demonstrating that diversity and removal jurisdiction properly exist in this case.

### D. Attorney's Fees and Costs

■ Although Plaintiffs seek costs and attorney's fees pursuant to 28 U.S.C. § 1447(c) [12] on the ground that "controlling precedent clearly establishes that this case was improvidently removed," (Pl.'s Mot. Remand at 15), this Court disagrees. As earlier mentioned, the Ninth Circuit has not directly addressed the question whether a punitive damages claim can be aggregated for the purpose of conferring diversity or removal jurisdiction in a class action. Furthermore, the recent development of relevant case law in the Fifth and Eleventh Circuits suggest that the removal issue is not as definitive as Plaintiffs suggest. Therefore, because Defendant has raised an arguable question regarding the existence of federal jurisdiction here, this Court will exercise its discretion [13] to decline to award costs and attorney's fees.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Remand (Doc. # 6) is granted. This case is remanded to the Maricopa County Superior Court in the State of Arizona.

**IT IS FURTHER ORDERED** that Plaintiffs' request for costs and attorney's fees is denied.

---

12. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

13. Whether to grant fees or costs is within the court's discretion. *Kasky,* 1991 WL 577038, at *7.