David **LAUCHHEIMER**, Plaintiff,

v.

**GULF OIL**, a limited partnership, Defendant.

Civ. No. 97–4525(JCL).

United States District Court, D. New Jersey.

April 27, 1998.

Jeffrey Walter Herrmann, Leonard Z. Kaufmann, Cohn, Lifland, Pearlman, Herrmann & Knopf, P.C., Saddlebrook, NJ, for Plaintiff.

Michael Xavier McBride, Richard D. Catenacci, Connell, Foley & Geiser, P.C., Roseland, NJ, for Defendant.

## OPINION

CHESLER, United States Magistrate Judge.

## I. INTRODUCTION

This matter comes before the Court on the motion of Plaintiff, David Lauchheimer, to remand the above captioned action to the New Jersey Superior Court, Law Division, Bergen County. Plaintiff's motion was referred to the undersigned by the Honorable John C. Lifland, U.S.D.J. Oral argument was heard on March 9, 1998. For the reasons set forth below, Plaintiff's motion will be granted.

## II. BACKGROUND

Plaintiff filed this action on behalf of himself and all others similarly situated for monetary damages and injunctive relief allegedly arising from Defendant's culpable conduct under the New Jersey Consumer Fraud Act (the "Act"). *See* Complaint ¶ 1; N.J.S.A. 56:8–1 *et seq.* (West Supp.1997). Plaintiff alleges that, in an effort to induce prospective customers to purchase Gulf Oil gasoline, Defendant launched an advertising campaign that encouraged customers to obtain a "Gulf MasterCard" (the "Card"). Complaint ¶ 14. Through their various methods of advertising, Defendant promised consumers using the Card a four percent (4%) discount on the price of all gasoline products purchased.[1] *Id.* ¶ 15. In response to this advertising campaign, Plaintiff obtained a Card and purchased gasoline and other related products from Defendant. *Id.* ¶ 2.

In his Complaint, Plaintiff alleges that Defendant misled both himself and other class members by misrepresenting the facts surrounding the Card's discount. Plaintiff claims that although a 4% discount is advertised, the holders of the Card do not actually receive a full 4% discount as advertised and expected. *Id.* ¶ 16. Plaintiff's Complaint insists that consumers do not receive a "discount" on gasoline purchases but actually receive a "credit" for the future purchase of gasoline at a Gulf station. *Id.* ¶ 17.

Plaintiff's Complaint continues, however, and alleges that even in months where a cardholder has a credit due, the credit may not be applied to the actual purchase of gasoline. Plaintiff contends that when computing the credit due to the cardholder for a subsequent month, any previous unused credit is first deducted from the cardholder's current balance. Accordingly, it is the cardholder's balance, not the amount purchased, that the 4% is applied to.

On August 5, 1997, Plaintiff filed this class action suit on behalf of himself and all other similarly situated New Jersey residents[2] in the New Jersey Superior Court,

[1.] According to Defendant, the Gulf MasterCard program was a rebate program and not a discount program. According to Defendant, a cardholder earned a rebate of 1% on all non-gasoline purchases, and an additional 3% on Gulf Oil gasoline purchases for a total rebate of 4% on gasoline purchases. Defendant stated that the rebate accumulated in the cardholder's "Rebate Account," and was credited against the next month's Gulf Oil gasoline charges.

[2.] Plaintiff contends that the class size numbers in the "tens of thousands."

Law Division, Bergen County. *See* Kaufmann Aff. Ex. A. Plaintiff is seeking equitable relief pursuant to the Act in the form of an injunction restraining Defendant from continuing the allegedly deceptive advertising practice. *See* Complaint ¶¶ 20–24. Additionally, Plaintiff is seeking monetary damages in an amount equal to the difference between 4% of the gasoline purchases and the actual discount or credit provided. *Id.* ¶¶ 25–28. Finally, Plaintiff seeks treble damages as permitted under the Act and reasonable attorney's fees.[3]

On September 19, 1997, Defendant filed a Notice of Removal, pursuant to 28 U.S.C. § 1441(a), with the Clerk of the Court. Defendant alleged that this Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1367(a). On October 24, 1997, Defendant filed its answer to the Complaint denying Plaintiff's allegations. Plaintiff thereafter filed its motion to remand this action on February 5, 1998.

### III. DISCUSSION

Plaintiff argues that removal to federal court was improper because this Court lacks the necessary subject matter jurisdiction to adjudicate this action. Defendant, however, argues that there is federal subject matter jurisdiction because the parties are from different states and the amount-in-controversy, exclusive of interest and costs, is in excess of $75,000. Each argument will be discussed in turn.

### A. Removal and Remand

Civil actions filed in a state court can generally be removed to a federal court in that state if the district courts of the United States have original jurisdiction.[4] *See* 28 U.S.C. § 1441 (1992). The notice of removal of a civil action must be filed within thirty days after the defendant receives, through service or otherwise, a copy of the pleading that sets forth a removable claim. 28 U.S.C. § 1446(b). Once removed, however, a case may be remanded to the state court if the court determines that it lacks adequate federal subject matter jurisdiction or if the notice of removal was untimely.[5] *See* 28 U.S.C. § 1447(c) (1992); *Brown v. Francis,* 75 F.3d 860, 864 (3d Cir.1996); *Rosebud Holding, L.L.C. v. Burks,* 995 F.Supp. 465, 466 (D.N.J. 1998); *Independent Mach. Co. v. International Tray Pads & Packaging, Inc.,* 991 F.Supp. 687, 690 (D.N.J.1998).

When faced with a motion to remand, the party who removed the action has the responsibility of establishing the propri-

---

**3.** The New Jersey Consumer Fraud Act states in relevant part that

[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J.S.A. 56:8–19 (West Supp.1997).

**4.** Various federal statutes deal with the subject of removal. *See generally* 28 U.S.C. §§ 1441–1452. The general removal statute states in relevant part that

[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be re-

moved by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

**5.** Federal courts have statutory authority to remand removed cases for lack of subject matter jurisdiction. *See generally* 28 U.S.C. § 1447. The federal remand statute states in relevant part that

[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c).

ety of removal. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992); *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Authority v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n. 6 (3d Cir.1987), *cert. dismissed*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Bishop v. General Motors Corp.*, 925 F.Supp. 294, 297 (D.N.J. 1996); *Rosebud Holding*, 995 F.Supp. at 466; *Independent Mach.*, 991 F.Supp. at 690. Removal is a statutory right and, therefore, must be construed in favor of the non-removing party. *Id.* Any doubts about the existence of federal jurisdiction must be resolved in favor of remand. *Batoff*, 977 F.2d at 851; *Boyer*, 913 F.2d at 111; *Bishop*, 925 F.Supp. at 297.

## B. Federal Jurisdiction

Jurisdiction in this matter is predicated upon diversity of citizenship. *See* Notice of Removal ¶¶ 5–12. Federal jurisdiction based on diversity of citizenship has two requirements. First, no plaintiff in the action can be a citizen of the same state as any of the defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Second, the "amount in controversy," exclusive of interest and costs, must exceed $75,000. 28 U.S.C. § 1332 (Supp.1998); *Independent Mach.*, 991 F.Supp. at 690. There is no question that the parties in this case are diverse.[6] Therefore, this Court's inquiry into the satisfaction of 28 U.S.C. § 1332 is based solely on the amount in controversy.

### 1. Amount in Controversy Generally

The party who invokes the jurisdiction of the federal courts carries the burden of demonstrating that court's jurisdiction.

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995). Courts will generally accept a party's good faith allegation of the amount in controversy, but if it is challenged by either the opposing party or the court, the party seeking the assistance of the federal court must provide sufficient evidence to justify its claims. *Id.*

Generally, the amount claimed in the plaintiff's complaint is controlling and is deemed to be the entire amount in controversy. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 589–90, 82 L.Ed. 845 (1938). Specifically, when federal subject matter jurisdiction is based on diversity of citizenship, the amount in controversy must be determined from an examination of the complaint at the time it was filed. *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961). This is not true, however, if upon the face of the pleadings or other proof submitted, it "appears to a legal certainty that the claim is really for less." *St. Paul Mercury Indem. Co.*, 303 U.S. at 288–89, 58 S.Ct. at 589–90, 82 L.Ed. at 845. It is then up to the plaintiff to refute the implication that jurisdiction is lacking. *Gibbs v. Buck*, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939); *Nelson v. Keefer*, 451 F.2d 289 (3d Cir.1971); *Independent Mach.*, 991 F.Supp. at 691; *Associated Business Tel. Systems Corp. v. Danihels*, 829 F.Supp. 707, 709–10 (D.N.J.1993).

Where a case has been removed, however, the amount in controversy is generally gleaned from the plaintiff's complaint. *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3d Cir.1993); *Independent Mach.*, 991 F.Supp. at 691; *see also Burns v. Windsor Ins. Co.*,

---

**6.** Plaintiff is a citizen of New Jersey. *See* Complaint ¶ 2. Defendant is a Delaware limited partnership with its principal place of business in Chelsea, Massachusetts. *See* Notice of Removal ¶ 6. Catamount Management is a general partner of Gulf Oil and is organized under the laws of the State of Massachusetts with its principal place of business in Chelsea, Massachusetts. *Id.* ¶ 7. Defendant's limited partners are the Irrevocable Trust of Stephen J. Kaneb, Irrevocable Trust of

Peter M. Kaneb, Irrevocable Trust of Christopher P. Kaneb, Irrevocable Trust of Gary P. Kaneb, Irrevocable Trust of Jeffrey J. Kaneb, Irrevocable Trust of Bruce A. Kaneb, and Cumberland Farms, Inc., a Delaware corporation with its principal place of business in Canton, Massachusetts. *Id.* ¶ 8. The trustees of the Irrevocable Trusts, John A. Kaneb, Virginia M. Kaneb, and Paul F. Beatty, are all citizens of Manchester, Massachusetts.

31 F.3d 1092, 1095–97 (11th Cir.1994) (recognizing that federal removal jurisdiction is determined by the amount of damages a plaintiff seeks); *Wilson v. Belin,* 20 F.3d 644, 651 n. 8 (5th Cir.) (noting that the amount in controversy was determined by the plaintiff's pleadings and papers), *cert. denied,* 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994); *Marcel v. Pool,* 5 F.3d 81, 84 (5th Cir.1993) (same); *Shaw v. Dow Brands,* 994 F.2d 364, 366 (7th Cir.1993) ("the amount in controversy [is determined] by merely looking at plaintiff's state court complaint"). The possibility that the plaintiff may "ask for or recover more after removal is not sufficient to support jurisdiction." *Burns,* 31 F.3d at 1097 n. 13; *Asociacion Nacional de Pescadores v. Dow Quimica,* 988 F.2d 559, 564–65 (5th Cir.), *reh'g denied,* 5 F.3d 530 (5th Cir.1993), *cert. denied sub nom. Dow Chemical Co. v. Asociacion Nacional de Pescadores,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 653 (1994); *Opelika Nursing Home v. Richardson,* 448 F.2d 658, 664 (5th Cir.1971). If the complaint is ambiguous as to the damages asserted, the court may consider subsequent documentation. *Angus,* 989 F.2d at 145. The plaintiff's complaint, however, is generally still controlling. *Id.; Independent Mach.,* 991 F.Supp. at 691.

 Meeting the amount in controversy in a class action suit is somewhat different. First, plaintiffs cannot aggregate their individual claims in order to meet the jurisdictional dollar amount in controversy. *Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 338, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319, *reh'g denied,* 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50 (1969); *In re Corestates Trust Fee Litigation,* 39 F.3d 61, 64 (3d Cir.1994). Accordingly, at least one class member is required to meet the federal jurisdictional amount.[7] *Zahn,* 414 U.S. at 301, 94 S.Ct. at 512; *Snyder,* 394 U.S. at 338, 89 S.Ct. at 1057; *In re Corestates,* 39 F.3d at 64.

### 2. Defendant's Computation of the Amount in Controversy

Defendant concedes that there is no realistic possibility that either the named Plaintiff or any class member could receive more than a few dollars in compensatory damages. Nevertheless, Defendant argues that the amount in controversy exceeds $75,000 under three different computations. First, Defendant asserts that attributing the total amount of the class attorney's fees to every member of the class will fulfill the jurisdictional amount requirement. Second, Defendant argues that attributing the total amount of the potential punitive damages to every member of the class will satisfy the requirement. Finally, Defendant contends that attributing attorneys fees awarded pursuant to the Act to the named plaintiff and extending supplemental jurisdiction to the claims of class members who failed to satisfy the jurisdictional amount satisfies the amount in controversy requirement. Plaintiff disagrees with each of Defendant's arguments and contends

7. The *Zahn* Court went further and held that in addition to the plaintiffs' inability to aggregate individual claims, each individual putative class plaintiff had to satisfy the amount in controversy or face dismissal from the action. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Since the enactment of the supplemental jurisdiction statute in 1995, *see* 28 U.S.C. § 1367, several courts have expressed their opinion that the statute overrules this portion of *Zahn. Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928 (7th Cir. 1996); *In re Abbott Laboratories,* 51 F.3d 524 (5th Cir.), *reh'g denied,* 65 F.3d 33 (5th Cir.1995); *In re Prudential Ins. Co. of America Sales Practices Litig.,* 962 F.Supp. 450, 504 (D.N.J.1997); *Deep v. Manufacturers Life Ins. Co.,* 944 F.Supp. 358, 361–63 (D.N.J.1996); *see also* Michael A. Baldassare, *Pandora's Box or Treasure Chest?: Circuit Courts Face 28 U.S.C. § 1367's Effect on Multi–Plaintiff Diversity Actions,* 27 Seton Hall L. Rev 1497, 1534 (1997) ("Section 1367 of title 28 legislatively overruled the *Zahn* holding by requiring only a named plaintiff to meet the diversity of citizenship and amount in controversy requirements."). Other courts have refused to depart from any portion of the *Zahn* ruling. *See In re Corestates Trust Fee Litigation,* 39 F.3d 61, 64 (3d Cir.1994); *Snider v. Stimson Lumber Co.,* 914 F.Supp. 388, 390–92 (E.D.Cal.1996); *Garcia v. General Motors Corp.,* 910 F.Supp. 160, 165–66 (D.N.J.1995); *Borgeson v. Archer–Daniels Midland Co.,* 909 F.Supp. 709, 715–16 (C.D.Cal. 1995); *see also* H.R.Rep. No. 101–734, at 29, *reprinted in* 1990 U.S.C.C.A.N. at 6875 ("section [1367] is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions"). For the reasons set forth in this opinion, the continued applicability of this aspect of *Zahn* need not be discussed.

that the jurisdictional minimum is not satisfied. Each of Defendant's arguments will be discussed in turn.

### a. Total Attorney's Fees Attributed to Each Class Member

 Defendant makes the argument that attorney's fees should be considered a unitary amount in controversy above the jurisdictional minimum provided for in 28 U.S.C. § 1332. In support of this argument, Defendant cites to a recent Northern District of Florida case in which the court held that a claim for attorney's fees in a class action suit should be considered in aggregate to determine the amount in controversy. *Howard v. Globe Life Ins. Co.*, 973 F.Supp. 1412, 1419–21 (N.D.Fla.1996).

In *Howard*, the plaintiffs brought a class action suit that alleged violations of certain Florida statutes prohibiting sales of credit life insurance in amounts greater than those necessary to pay off the balance of certain loans. *Id.* at 1414. The defendants removed the action to federal court based on diversity of citizenship jurisdiction. *Id.* The plaintiffs filed a motion to remand the case to state court based on the contention that the amount in controversy requirement was not satisfied. *Id.* The defendants argued that the amount in controversy was satisfied by, *inter alia*, the plaintiffs' potential attorney's fee award called for by the Florida statute at issue. *Id.* The court, persuaded by the plaintiffs' argument regarding attorney's fees, held that in these types of class actions attorney's fees should be considered in the aggregate and not distributed pro rata. *Id.* at 1420.

Although *Howard* supports Defendant's argument that the amount in controversy requirement has been satisfied in the case at bar, this Court finds its reasoning unpersua-sive. In fact, this Court agrees with the line of cases holding that attorney's fees cannot be aggregated when determining the amount in controversy in a class action. *See, e.g., Bishop v. General Motors Corp.*, 925 F.Supp. 294, 299 (D.N.J.1996); *Neff v. General Motors Corp.*, 163 F.R.D. 478 (E.D.Pa.1995); *see also* Michael A. Baldassare, *Pandora's Box or Treasure Chest?: Circuit Courts Face 28 U.S.C. § 1367's Effect on Multi–Plaintiff Diversity Actions*, 27 SETON HALL L. REV. 1497, 1534 (1997) (discussing the dichotomy in federal court decisions with regards to the aggregation of attorney's fees when calculating the amount in controversy). In *Bishop*, for example, the court was faced with a class action suit filed by a car owner seeking damages due to economic harm allegedly caused by the defendant manufacturer's failure to disclose a brake defect. *Bishop*, 925 F.Supp. at 297. In determining that attorney's fees may not be aggregated to meet the jurisdictional minimum, the *Bishop* court expressly stated that fees are to be distributed pro rata "across the class or across the claimants." *Id.* at 300.[8]

Likewise, the *Neff* court dealt with a lawsuit brought by vehicle owners against the automobile manufacturer for economic loss resulting from allegedly defective brakes. *Neff*, 163 F.R.D. at 479–80. The parties in that case agreed that the named plaintiffs suffered actual damages of, at the most, $3,700. *Id.* at 483–84. The court noted that even if it chose to treble the damages pursuant to the applicable statute, the defendant could only justify jurisdiction by claiming that each plaintiff was entitled to approximately $40,000 in attorney's fees.[9] *Id.* at 484. The court stated that "it is hard to conceive how a $10,000 claim, already statutorily trebled, could support a reasonable attorney's fee of $40,000." *Id.* In concluding

---

**8.** In making this determination, the court in *Bishop* relied upon an unpublished Third Circuit opinion. *Bishop*, 925 F.Supp. at 299 n. 3. That opinion expressly stated that attorney's fees could not be aggregated to satisfy the amount in controversy requirement and must be distributed pro rata to all class members. *See Spellman v. Meridian Bank*, 1995 WL 764548, at *10 (3d Cir. Dec.29, 1995). After issuing its decision, the Third Circuit vacated the opinion and granted a rehearing en banc. The rehearing was held and the Third Circuit affirmed the district court without an opinion. *See Deffner v. Corestates Bank*, 92 F.3d 1170 (3d Cir.1996). The issue of aggregation of attorney's fees was not at issue in the Third Circuit's rehearing.

**9.** Because the amount in controversy must meet or exceed $75,000, the defendants in *Neff* would now have to show that each named plaintiff was entitled to almost $65,000 in attorney's fees.

that attorney's fees are to be apportioned pro rata, the court noted that it "would never award in attorney fees an amount that is over thirteen times the amount of actual damages or four times the amount of statutorily (and hypothetically) trebled damages." *Id.* According to the *Neff* court, "[t]o do so would be to reward overlawyering of the case." *Id.*

■ The Court finds both of these cases to be persuasive in their analysis. First, adopting this rule is appropriate because it is consistent with the policy of construing removal statutes narrowly. *Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir. 1992); *Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990), *cert. denied,* 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Bishop,* 925 F.Supp. at 297. Second, the case at bar is very similar to *Neff,* where the court refused to allow the amount in controversy to be satisfied by a potentially excessive award of fees. Likewise, the present case deals with a class of credit cardholders who, if successful, will receive very small compensatory damages even if trebled under the Act. Accordingly, the court would have to award in excess of $70,000 in fees to even come close to satisfying the jurisdictional minimum. This figure seems excessive for a case where the damages are so small.

Finally, this Court will not aggregate a small amount of attorney's fees that potentially would be awarded to each member of the class so that each member will satisfy the amount in controversy. The better approach is to allocate to each Plaintiff, for jurisdictional purposes only, his or her individual and pro rata share as a class member of the total attorney's fees. *See Bishop,* 925 F.Supp. at 301. Because the named Plaintiff brought this action on behalf of "many tens of thousands of [class] members," the total award of attorney's fees in this matter would have to exceed $700,000,000.00 ($70,000 multiplied by 10,000 class members) if it were to be used to satisfy the jurisdictional minimum. After considering the facts submitted by both parties, I can say to a certainty that attorney's fees in such an amount would never be awarded.

### b. Total Punitive Damages Attributed to Each Class Member

■ Defendant next argues that the total amount of potential punitive damages should be attributed to each member of the class. By doing so, each and every class member will independently satisfy the jurisdictional requirement. In support of this contention, Defendant cites to *Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353 (11th Cir.1996) and *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir.), *reh'g denied,* 70 F.3d 26 (5th Cir. 1995). *Tapscott* dealt with a lawsuit filed by a class of consumers who had purchased automobile service contracts from the defendant. The Eleventh Circuit focussed on the nature of punitive damages under Alabama law in order to reach its conclusions. *Id.* at 1359. In doing so, the court concluded that punitive damages sought due to alleged statutory violations in the sale of the automobile service contracts may be considered in the aggregate for jurisdictional purposes. *Id.*

*Allen* was a case involving a class of plaintiffs who allegedly suffered damages as a result of an oil and gas well explosion. In its opinion in *Allen,* the Fifth Circuit stated that punitive damages are "undivided claims of right with a potentially separable award." *Allen,* 63 F.3d at 1334. In reaching its decision, the court considered whether the issue in the case created one right of recovery in the plaintiffs and whether the defendant had any interest in the apportionment of an award among the plaintiffs. *Id.* at 1331. Accordingly, the court held that a punitive damage award under Mississippi law could be aggregated to satisfy the jurisdictional amount. *Id.* at 1334.

While both *Allen* and *Tapscott* lend support to Defendant's argument that the amount in controversy requirement has been satisfied in the case at bar, this Court agrees with the line of cases which hold that punitive damages cannot be aggregated to satisfy the jurisdictional minimum. *See Gilman v. BHC Securities, Inc.,* 104 F.3d 1418, 1430 (2d Cir.1997); *Anthony v. Security Pac. Fin. Servs., Inc.,* 75 F.3d 311, 315 (7th Cir.1996); *Green v. H & R Block, Inc.,* 981 F.Supp. 951, 955 (D.Md.1997); *Amundson & Assoc. Art Studio, Ltd. v. National Council on Compen-*

*sation Ins., Inc.,* 977 F.Supp. 1116, 1127 (D.Kan.1997); *Johnson v. Gerber Prod. Co.,* 949 F.Supp. 327, 329 (E.D.Pa.1996); *Haisch v. Allstate Ins. Co.,* 942 F.Supp. 1245, 1250 (D.Ariz.1996); *Bishop,* 925 F.Supp. at 298. First, as in the attorney's fee context discussed above, adopting this rule is proper because it is consistent with the policy of construing removal statutes narrowly. *Batoff,* 977 F.2d at 851; *Boyer,* 913 F.2d at 111; *Bishop,* 925 F.Supp. at 297.

Second, the holdings of both *Snyder* and *Zahn* proscribe the aggregation of punitive damages unless a prior determination has been made that the underlying claim asserts a single title or right. *Gilman,* 104 F.3d at 1430 (citing *Zahn,* 414 U.S. at 294, 94 S.Ct. at 508). Cases that deal with such indivisible res are those involving an estate, a piece of real property, or an insurance policy. *Bishop,* 925 F.Supp. at 298. The case at bar does not involve any such common or undivided interest because each individual class member could have filed suit for compensatory and punitive damages without affecting the rights of any other class member. The putative class in the instant case did not sue to enforce common and undivided interests. To allow the Defendant to aggregate the potential award of punitive damages without establishing this prerequisite " 'would eviscerate the holdings of *Snyder* and *Zahn* and would run counter to the strict construction of the amount-in-controversy requirement those cases mandate.' " *Gilman,* 104 F.3d at 1431 (citing *Visintine v. Saab Auto., A.B.,* 891 F.Supp. 496, 499 (E.D.Mo.1995)); *see also Weinberg v. Sprint Corp.,* 165 F.R.D. 431, 442 (D.N.J.1996).

Finally, it would be inconsistent for this Court to hold that aggregation of punitive damages is permitted to satisfy the amount in controversy requirement when the Third Circuit has previously held that attorney's

fees may not be aggregated to meet the jurisdictional minimum. *See Bishop,* 925 F.Supp. at 299; *see also supra* note 6 and accompanying text. It is reasonable to construe the Third Circuit's case law as not being restricted to merely attorney's fees "but for the broader proposition that class members, whose 'claims fall short [of the amount in controversy requirement] cannot satisfy the requirement by aggregation of claims.' " *Haisch,* 942 F.Supp. at 1251 (quoting *Goldberg v. CPC Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982)). This Court believes that this reasoning is sound with respect to punitive damages and concludes that the aggregation of the class members' potential punitive damages claims for the purpose of establishing diversity of citizenship jurisdiction is not permitted.[10]

Because the Plaintiffs' claims for punitive damages in this case are not a single right but have been brought together in this class action for convenience sake, the Court will not aggregate potential punitive damage awards to each member of the class so that each member satisfies the jurisdictional minimum. As this Court stated in its discussion regarding attorney's fees, *supra,* the best approach is to allocate to each Plaintiff, for jurisdictional purposes only, his or her individual share as a class member of a single punitive damage award. *See Bishop,* 925 F.Supp. at 301. Because the named Plaintiff brought this action on behalf of "many tens of thousands of [class] members," the total punitive damage award in this matter would have to surpass $700,000,000.00 ($70,000 multiplied by a minimum of 10,000 class members) if it were to be used to satisfy the amount in controversy. This Court is certain that, despite the size of Gulf Oil, "such an award would be patently absurd and legally unsustainable." *Id.* Accordingly, the punitive

---

10. In their reply papers, Plaintiff argues that potential punitive damages should not be considered in the aggregate to satisfy the amount in controversy requirement because Plaintiff's Complaint does not request punitive damages. Under the New Jersey Consumer Fraud Act an award of treble damages is mandatory if a plaintiff proves both an unlawful practice under the Act and a resulting ascertainable loss. N.J.S.A. 56:8–19; *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 647 A.2d

454 (1994). Although the treble damages award already contains a substantial punitive component beyond the amount needed to compensate for actual harm, *see Neveroski v. Blair,* 141 N.J.Super. 365, 358 A.2d 473, 482 (App.Div. 1976), such an award does not bar a plaintiff from receiving additional common law punitive damages. *See Wildstein v. Tru Motors, Inc.,* 227 N.J.Super. 331, 335, 547 A.2d 340 (Law Div. 1988).

damage awards for all class members will not be aggregated to satisfy the amount in controversy requirement.

### c. Total Attorney's Fees Attributed to Named Plaintiff

■ Defendant's third and final argument is that this Court should attribute the attorney's fees that would be awarded under the New Jersey Consumer Fraud Act [11] to the named Plaintiff and then extend supplemental jurisdiction, under 28 U.S.C. § 1367,[12] to the claims of class members who have failed to satisfy the jurisdictional amount in controversy. Defendant contends that once the named Plaintiff has been assigned the total amount of attorney's fees for the case, he will meet the amount in controversy requirement, and there will be federal jurisdiction over the remainder of the class under § 1367(a). Defendant's argument fails in this instance primarily for the reasons outlined above.

■ Under Defendant's theory, as long as the named Plaintiff satisfies the $75,000 amount in controversy requirement, federal supplemental jurisdiction would exist as to the remainder of the class members regardless of whether their claims met the jurisdictional minimum.[13] The Court has already established, however, that attorney's fees, whether granted pursuant to a federal or state statute, and punitive damages cannot be aggregated so as to satisfy the jurisdictional minimum. *Bishop*, 925 F.Supp. at 299. It is clear, however, that both attorney's fees and punitive damages may be added pro rata into calculating a named plaintiff's amount in controversy. *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202, 54 S.Ct. 133,

78 L.Ed. 267 (1933); *Neff*, 163 F.R.D. at 483. Accordingly, the named Plaintiff would need to meet the jurisdictional minimum of $75,000 through his own compensatory damages (trebled), his own share of attorney's fees, and his own share of punitive damages in order for this Court to have subject matter jurisdiction over the claims of any class member who did not individually meet the amount in controversy requirement.

It is mathematically impossible for the named Plaintiff to have an amount in controversy that exceeds $75,000. First, the named Plaintiff's compensatory damages are extremely low. As stated above, Plaintiff's Complaint is based on the allegation that he and other New Jersey cardholders did not receive the entire amount of the promised 4% discount on gasoline purchased. In order to meet the $75,000 minimum on compensatory damages alone, Plaintiff would have to had purchased $1,875,000 gallons in gasoline. Additionally, the named Plaintiff has submitted an affidavit in which he claims his compensatory damages equal less than $100. Accordingly, even if trebled, the named Plaintiff's compensatory damages equal less than $300.

Second, for Plaintiff's pro rata portion of the attorney's fees or punitive damages to individually meet the amount in controversy requirement, the total amount awarded to the class members for either of these would have to equal $750,000,000. It is preposterous to think that any award of either attorney's fees or punitive damages would ever reach such a level. Additionally, for the amount in controversy to be satisfied by a combination of the named Plaintiff's compensatory damages, attorney's fees, and punitive

---

11. The Act states that "[i]n all actions under this section the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J.S.A. 56:8–19.

12. The supplemental jurisdiction statute states in relevant part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

13. Defendant's argument in this instance is based upon those cases which hold that *Zahn* was overruled by the enactment of 28 U.S.C. § 1367. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928 (7th Cir.1996); *In re Abbott Laboratories*, 51 F.3d 524 (5th Cir. 1995); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F.Supp. 450, 504 (D.N.J. 1997); *Deep v. Manufacturers Life Ins. Co.*, 944 F.Supp. 358, 361–63 (D.N.J.1996); *see also* Baldassare, *supra*, at 1534. As previously stated, it is unnecessary for this Court to discuss the continued applicability of *Zahn* because Defendant's arguments fail under either scenario.

damages, the combined total of attorney's fees and punitive damages would have to equal approximately $747,000,000. This figure is as outrageous as the first and this Court cannot imagine awarding such amounts in a case that deals with rebates owed on gasoline purchases. Accordingly, Defendant has failed to meet its burden of establishing that the named Plaintiff meets the minimum jurisdictional amount for this Court to have original jurisdiction over the action under 28 U.S.C. § 1332.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand the above captioned action to the New Jersey Superior Court, Law Division, Bergen County, will be granted.